**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3934-22

MCCARTHY GALFY &
MARX LLC,

     Plaintiff-Respondent,

v.

STEPHEN LEE,

     Defendant-Appellant.

_____

Submitted November 19, 2024 – Decided December 2, 2024

Before Judges Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-2337-20.

Stephen Lee, appellant pro se.

McCarthy & Soriero LLC, attorneys for respondent (James T. McCarthy, on the brief).

PER CURIAM

Defendant Stephen Lee, self-represented, appeals from a July 17, 2023 Law Division order denying reconsideration of a March 9, 2023 order, which granted plaintiff McCarthy Galfy & Marx, LLC final judgment for a sum certain. Having reviewed the record, parties' arguments, and applicable legal principles, we affirm in part, reverse in part, and remand.

I.

This matter returns to us after we reversed and vacated the Law Division's prior order entering final judgment and remanded for further proceedings. We incorporate and summarize the salient facts and procedural history as set forth in our prior opinion, McCarthy Galfy & Marx, LLC v. Stephen Lee, (McCarthy I), No. A-0382-21 (App. Div. June 29, 2022) (slip op. at 1-22).

In 2012, defendant retained Steven A. Caputo, Esq. to represent him in a divorce action. McCarthy I, slip op. at 2. He signed a retainer agreement with Caputo that provided an hourly billable rate of $325 for legal services. Ibid. The intervention of "a businessman from China, who had a judgment of approximately $1,040,000 against" defendant's wife Xiaoping Li, complicated the divorce action. Id. at 3. In connection with the divorce action, Caputo "filed an affidavit of services in support of his request for $175,275 in legal fees and $1,354.01 in costs." Ibid. After the Family Part entered a judgment of divorce

and "granted [the businessman's] motion for entry of default judgment against Li," Caputo filed an appeal on defendant's behalf. Ibid. "On September 4, 2018, we vacated the [Family Part's] ruling on equitable distribution and remanded" for further proceedings. Lee v. Xiaoping Li, No. A-5063-15 (App. Div. Sept. 4, 2018) (slip op. at 1-25).

In May 2018, because of a severe medical illness, the Supreme Court placed Caputo on "disability inactive status." McCarthy I, slip op. at 3. Caputo had represented defendant from 2012 until 2018, including filing "an appeal on defendant's behalf." Id. at 20-21. In October 2018, "Caputo sent a billing statement to defendant for services rendered in connection with the divorce action" and appeal. Id. at 4. Caputo also provided a copy to plaintiff's partner, James McCarthy. Ibid.

After we remanded the divorce action, the Family Part held a hearing in April 2019, and plaintiff assumed representation of defendant. Ibid. Plaintiff failed to file a substitution of attorney with the Family Part and enter a retainer agreement with defendant. Id. at 20-21. Nevertheless, it is undisputed plaintiff worked on defendant's Family Part action and a consent judgment was entered after settlement. Id. at 4.

A-3934-22

On February 24, 2020, plaintiff advised defendant by letter that it was holding $144,721.88 in proceeds from the Family Part action in its trust account. Id. at 5. Caputo was listed as of counsel on the letterhead. Plaintiff requested payment from the funds for legal services rendered but withdrew its prior offer to compromise the fee, which would have released $30,000 to defendant. Ibid. After receiving the letter, defendant paid no money to plaintiff or Caputo for legal services rendered.

On July 22, plaintiff filed a Law Division complaint against defendant for legal "fees in the amount of $172,922.80." Id. at 6. Defendant filed an answer and counterclaim, alleging legal malpractice claims. Id. at 7. After defendant failed to submit an affidavit of merit and discovery responses, plaintiff moved to strike defendant's answer and defenses, which the Law Division granted. Id. at 8. Plaintiff thereafter moved for summary judgment, which the Law Division granted as unopposed. Ibid. Later, defendant moved for reconsideration of the Law Division's order granting plaintiff summary judgment, which the Law Division denied. Id. at 9-11.

On appeal, we reversed the Law Division's order denying plaintiff reconsideration because the "record plainly d[id] not show that plaintiff and defendant entered into a retainer agreement" supporting the award of counsel

4

fees. Id. at 14. Further, we observed defendant disputed plaintiff's work and representation. Ibid. Caputo never requested "defendant's consent or . . . leave of court" to withdraw from representing defendant. Id. at 20. We noted it was "undisputed that defendant had a written retainer agreement with Caputo" and that "Caputo represented defendant from the onset of defendant's divorce proceedings until Caputo was transferred to disability inactive status . . . ." Ibid.

On August 8, 2022, after our remand, a new Law Division judge addressed the motion and invited the parties to file further submissions. On September 6, plaintiff submitted a brief and affidavits of service from McCarthy and Caputo. Plaintiff "waive[d] any fees or costs that it generated and" limited the application "to seeking fees and costs generated by Caputo pursuant to the written retainer agreement with [d]efendant." Caputo certified to representing defendant in the divorce action "until such time as his firm was taken over by [plaintiff] in or about May 2018." On September 23, defendant filed a letter brief, objecting to summary judgment, arguing: "[t]he fees generated by Caputo ha[d] not been verified and [we]re inaccurate"; "[p]laintiff [wa]s not entitled to the fees generated by Caputo" because "[t]here [wa]s no privity of contract between [p]laintiff and [d]efendant"; and "Caputo did not earn the value of his

5

representation" as he was "very ill" and had a diminished "ability to practice law."

On March 9, 2023, after considering the submissions, the motion judge issued an order granting plaintiff summary judgment and entering final judgment against defendant for $144,879.26 in counsel fees for work The Law Firm of Stephen A. Caputo, PC performed. The motion judge cited our decision, which stated, "It is . . . undisputed that, from November 2012 to June 2016, Caputo performed work pursuant to the retainer agreement with defendant . . . . Moreover, from October 2018 to July 2019, plaintiff performed work on defendant's behalf without a retainer agreement." The motion judge further highlighted our opinion's conclusion that "[u]nder the unique circumstances of this case, we vacate the entry of judgment and remand for the trial court to determine what plaintiff may be entitled to because of its acquisition of Caputo's firm and under a quantum meruit theory." After recognizing plaintiff had waived its right to counsel fees the firm had generated, the motion judge "focus[ed] solely on the issue of the fees and costs generated by The Law Firm of Steven A. Caputo, PC . . . pursuant to the written retainer agreement with [d]efendant." The motion judge found it undisputed that while the Family Part order was on appeal, plaintiff's "firm merged with Caputo's firm and took over

6

the Caputo firm files." Further, the motion judge reviewed Caputo's certification and concluded that "the rate of $325 [was] contained in [Caputo's] [r]etainer [a]greement," and Caputo's alleged "total legal fees and costs . . . [we]re $144,879.26."

The motion judge highlighted that defendant "elected not to participate in discovery," "served [no] discovery demands," and only "served his discovery responses" after summary judgment was granted, "nearly a month after the discovery period had ended." The motion judge found no disputed material issues of fact because: Caputo's billable amount was $325 per hour under the retainer agreement; his "bill[ing statement] dated October 7, 2018 . . . [wa]s for work performed . . . two years prior to [his] disability [status]"; defendant had acknowledged Caputo was no longer billing for work "after he was placed on disability"; and the Family Part consent judgment defendant allegedly entered under duress was "dated April 23, 2019, well after the period of time covering Caputo's work for [d]efendant."

The motion judge considered the factors under the Rules of Professional Conduct (RPC) 1.5(a) and concluded that "Caputo performed work for [d]efendant from 2012 through 2016 and on the appeal," and "[p]laintiff then

acquired Caputo's firm, thereby entitling [p]laintiff to fees generated by Caputo."

Defendant moved for reconsideration of the order granting summary judgment and awarding counsel fees, which a new judge heard because the prior motion judge retired. The reconsideration judge considered both parties' submissions and noted plaintiff had waived its claim for McCarthy's fees. She found the motion judge had properly focused on the "fees and costs generated by The Law Firm of Steven A. Caputo, PC pursuant to the written retainer agreement with . . . defendant." After a detailed evaluation of the motion judge's findings and conclusions, she concluded defendant failed to demonstrate the order granting summary judgment was "based upon a palpably incorrect or irrational basis." She also found the motion judge did not "fail[] to appreciate the significance of probative, competent evidence."

On appeal, defendant contends the motion judge erred by granting judgment to plaintiff: without conducting a quantum meruit analysis; and because it was not entitled to Caputo's fees and the amount was unreasonable.

II.

Our review of a trial court's summary judgment decision is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024); see also

8

R. 4:46-2(c). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). Our review entails determining "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." C.V. ex rel C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 305 (2023) (quoting Samolyk v. Berthe, 251 N.J. 73, 78 (2022)).

"Rule 4:46-2(c)'s 'genuine issue [of] material fact' standard mandates that the opposing party do more than 'point[] to any fact in dispute' in order to defeat summary judgment." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (alterations in original) (emphasis omitted) (first quoting R. 4:46-2(c); and then quoting Brill, 142 N.J. at 529). A court should grant summary judgment, "in particular, 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

A-3934-22

"A dispute of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Gayles by Gayles v. Sky Zone Trampoline Park, 468 N.J. Super. 17, 22 (App. Div. 2021) (quoting Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017)). Insubstantial arguments based on assumptions or speculation are not enough to overcome summary judgment. Brill, 142 N.J. at 529; see also Dickson v. Cmty. Bus Lines, Inc., 458 N.J. Super. 522, 533 (App. Div. 2019) ("'[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome' summary judgment motions." (quoting Puder v. Buechel, 183 N.J. 428, 440-41 (2005))).

We review orders denying reconsideration under Rule 4:49-2 for an abuse of discretion. See AC Ocean Walk, LLC v. Blue Ocean Waters, LLC, 478 N.J. Super. 515, 523 (App. Div. 2024). A trial court should only grant a motion for reconsideration when "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence[,]" or 3) "if a litigant wishes to bring new or additional information to the [c]ourt's attention which it could not have provided on the first application."

10

Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

III.

We begin by recognizing our Supreme Court's holding that "[a]greements between attorneys and clients concerning the client-lawyer relationship generally are enforceable, provided the agreements satisfy both the general requirements for contracts and the special requirements of professional ethics." Tax Auth., Inc. v. Jackson Hewitt, Inc., 187 N.J. 4, 15 (2006) (quoting Cohen v. Radio-Elecs. Officers Union, 146 N.J. 140, 155 (1996)). "A retainer agreement between an attorney and client is a contract, but not an ordinary contract. '[T]he unique and special relationship between an attorney and a client' requires that a retainer agreement satisfy not only ordinary principles governing contracts, but also the professional ethical standards governing the attorney-client relationship." Balducci v. Cige, 240 N.J. 574, 592 (2020) (alteration in original) (quoting Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510, 529 (App. Div. 2009)).

Pursuant to Rule 4:42-9(b), "[A]ll applications for the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated by RPC 1.5(a)." A party seeking attorneys' fees must establish reasonableness

11

under the factors.  See Seigelstein v. Shrewsbury Motors, Inc., 464 N.J. Super. 393, 405 (App. Div. 2020).  RPC 1.5(a) mandates, "A lawyer's fee shall be reasonable" and provides, "The factors to be considered in determining the reasonableness of a fee include the following":

> 1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> 2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> 3) the fee customarily charged in the locality for similar legal services;
>
> 4) the amount involved and the results obtained;
>
> 5) the time limitations imposed by the client or by the circumstances;
>
> 6) the nature and length of the professional relationship with the client;
>
> 7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> 8) whether the fee is fixed or contingent.

"Ultimately, 'the attorney bears the burden of establishing the fairness and reasonableness of'" a fee arrangement.  Balducci, 240 N.J. at 594 (quoting Cohen, 146 N.J. at 156).  This burden is satisfied by a preponderance of the

12

evidence.  Giarusso v. Giarusso, 455 N.J. Super. 42, 50 (App. Div. 2018).  When a fee dispute arises, courts "ordinarily defer to the parties' agreement and the fee charged thereunder if it appears that they meet a prima facie test of fairness and reasonableness."  Alpert, 410 N.J. Super. at 538.  "If that test is met and the client utterly fails to come forward with anything of substance to rebut the prima facie showing and no expert is produced to challenge the invoice as unreasonable, the court appropriately should enforce the agreement."  Ibid.

We first address defendant's contentions that the motion judge erred by failing to apply "a quantum meruit analysis, . . . unjustly enrich[ing] . . . [p]laintiff by allowing [McCarthy] to collect fees on services he did not provide."  Defendant conflates the application of a quantum meruit analysis to plaintiff's prior fee claim for McCarthy's legal services performed without a retainer agreement and plaintiff's contractual fee claim for Caputo's legal services performed under the retainer agreement.  Undisputedly, plaintiff waived the collection of counsel fees for its legal services that Caputo did not bill for, as it had not entered a retainer agreement with defendant.  This rendered moot the motion judge's consideration of plaintiff's collection of McCarthy's legal service fees under a quantum meruit analysis.  We generally "do not resolve issues that have become moot due to the passage of time or intervening

events." Wisniewski v. Murphy, 454 N.J. Super. 508, 518 (App. Div. 2018) (quoting State v. Davila, 443 N.J. Super. 577, 584 (App. Div. 2016)).

We next address defendant's arguments that plaintiff is not entitled to collect Caputo's counsel fees for the work he performed under the retainer agreement. McCarthy's September 2022 affidavit stated that "due to Caputo's illness, [p]laintiff's firm merged with Caputo's firm and took over the Caputo files." Further, McCarthy attested that "[p]laintiff [wa]s entitled to fees for work generated by Caputo." Caputo's affidavit stated, "[H]is firm was taken over by [plaintiff] in or about May 2018," and "[plaintiff] [wa]s entitled to [the] legal fees and costs for work generated by . . . Caputo." We note defendant acknowledged he did not seek any discovery. Defendant offers no material fact to refute Caputo's contention that after the firms' merged, plaintiff became entitled to collect defendant's counsel fees owed to Caputo.

The motion judge copiously evaluated Caputo's legal fees under RPC 1.5(a) and determined: (1) "[a]ll of . . . [Caputo's] time and labor was required . . . to properly perform legal representation"; (2) Caputo was precluded "from spending time on other matters" "due to the significant time spent" on defendant's matter; (3) "[t]he fee charged [wa]s customarily charged in th[e] locality"; (4) the "[t]otal legal fees and cost[s] incurred by Caputo were

14

$169,574.26" less the fees defendant already paid; (5) "[t]he time limitations . . . were far greater than other cases given the procedural history and numerous issues arising from the intervenor claim"; (6) Caputo represented defendant from 2012 until approximately May 2018; (7) "Caputo was admitted to the New Jersey Bar in 1981"; and (8) the fee was hourly. Caputo's affidavit provided he "expended 498.05 hours" representing defendant and "incurred costs of $7,708.01." Further, Caputo referenced his "[c]ertification dated June 14, 2016 with statement[s] from July 11, 2012 through June 13, 2016 for 389.50 hours and costs in the amount of $1,354.01" and the "[b]ill[ing statement] dated October 7, 2018 for 108.55 hours and costs in the amount of $6,354[]." Caputo had revised his billable rate to $325, comporting with the retainer agreement.

As stated in our prior opinion, "defendant had a written retainer agreement with Caputo" for $325 per hour, and "Caputo represented defendant from the onset of defendant's divorce proceeding until Caputo was transferred to disability inactive status." Further, defendant admitted Caputo performed legal work for "over [six] years."

The record amply supports the motion judge's findings with the exception of Caputo's three billing entries for 2.65 hours of legal services performed after his May 2018 placement on disability inactive status. Specifically, we issued

15

the Lee opinion on September 4, 2018, and Caputo billed for the receipt and review of our decision, a scheduling order for judicial conference, and a civil docketing statement. These billed services are precluded because they were for legal services performed after he was placed on disability inactive status. Therefore, the motion judge improvidently awarded the amount of $861.25. We discern no error in the award to plaintiff of the remaining $144,018.01 for Caputo's legal services rendered to defendant under the retainer agreement.

Further, we are unpersuaded by defendant's blanket statement that "[i]t was unreasonable for the [motion judge] to issue judgment with the accuracy of the billing statements at issue." While we have discerned, after a review of the billing statements, that an adjustment for 2.65 hours is required, defendant failed to specifically dispute Caputo's legal work delineated in the billing statements. While defendant argues Caputo's health affected his legal abilities, defendant provided no factual support disputing the sufficiency of Caputo's services. Notably, defendant conceded Caputo successfully appealed the Family Part judgment, garnering a reversal.

Defendant's general assertion that the "total amount of fees including Caputo's [are] unreasonable" does not alone create a disputed material issue of fact. As Caputo performed the work directly for defendant, defendant was

clearly capable of disputing the accuracy of Caputo's billing statements, which included a description of his work, the date rendered, and the time expended on the work. An allegation is not enough to defeat summary judgment; the non-moving party "must produce sufficient evidence to reasonably support a verdict in its favor." Invs. Bank v. Torres, 457 N.J. Super. 53, 64 (App. Div. 2018), aff'd and modified, 243 N.J. 25 (2020). We are also unpersuaded by defendant's contention that Caputo is not entitled to fees because he engaged in the unauthorized practice of law by attending defendant's 2019 Family Part hearing with McCarthy.

Having concluded there are no genuinely disputed material issues of fact regarding the legitimacy and reasonableness of Caputo's remaining legal fees billed pursuant to the retainer agreement, we affirm in part, reverse in part, and remand only to vacate the judgment as to the quantum of damages. On remand, the court shall enter an amended judgment for the recalculated damages amount of $144,018.01. See Mengle v. Shields, 53 N.J. Super. 76, 83 (App. Div. 1958) (stating a judgment modified on appeal shall be remanded to the trial court "for the entry of an amended judgment in the proper amount").

A-3934-22

To the extent that we have not addressed plaintiff's remaining contentions, they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed in part, reversed in part and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3934-22